Good morning, Your Honor. I'd like to reserve six minutes if I could. Very good. Go ahead, please. Thank you, Jeff Lewis, for the appellate. May it please the Court, the essential holding of AC properties is that the bankruptcy court is to engage in a meaningful comparison between the proposed settlement and the likely fruits of litigation if the case is not settled. That wasn't done here. Although no finding was made on the issue of probability of success, it had been made. Is that what ANC property says you have to satisfy? You have to satisfy, definitely, the finding of a probability of success under ANC? The Court must consider the probability of success. Okay. Does that include a finding of probability of success? It is not synonymous with finding, Your Honor. Yeah, because I know what you're after here, and it's typically why we have ANC properties, which is to avoid exactly what you're trying to accomplish here, right? There's no mini-trial requirement, right? Absolutely not. Okay. And the Court need not come up with a precise dollar amount or percentage. Right. But the examples that we presented in our reply brief of what courts typically do is say, yeah, there's a good chance, there's a high chance, or there's a low chance of probability prevailing. The bankruptcy court just threw up his hand and said, I don't know if you're going to win or not, but I do know delay and costs are always factors that this Court always, in an ANC properties type analysis, always considers in favor of settlement. And you know that. Well, you know as well that there was an appeal of the successful set-aside with respect to the state court judgment, right? We're arguing that tomorrow in San Antonio. Okay. But wasn't the bankruptcy court entitled to say, gee, you know, there is a reality here in which this is $4.5 million because that set-aside was not appropriate. I wouldn't characterize it that way, Your Honor, because what happened is— No, no. Was the bankruptcy court, could the bankruptcy court consider that? The bankruptcy court could consider the pendency of the appeal. And not the chance that the appeal would be successful? Keep in mind the standard of the state court, Your Honor, is did Sanders present a meritorious defense? If he can't present a meritorious defense in that appeal, he gets nowhere. Well, the first thing that it is, was he aware of it? And there's conflicting testimony about that to be polite, correct? Yes, Your Honor, very polite. And the superior court resolved that question of fact in favor of my client at the trial level, and now it's going up on appeal to see if that finding of fact can be disturbed or not. I guess what we're asking here is what was the level of inquiry required by the bankruptcy court? So tell me what you think that is. Because ANC doesn't really call for very much. So tell me why I'm wrong about that. Well, I would say that the four factors announced in ANC properties, there has to be some particularized analysis in all the things that this judge said about this settlement. He could have said about any settlement. He said, I want this creditor paid sooner rather than later. You could say that about any settlement. He said the litigation expense might overwhelm the cost. He could say that about any settlement. There is no finding, for example, that the litigation in the state court could be concluded in a summary fashion before the watchers are able to enjoy the fruits of this money. And the evidence before the court on this was a pool of money with several investors and several borrowers was all commingled. There was no evidence presented of a specific amount of sum of funds that was converted. And the reason that's important is for the troubling of damages, which really drives the dollars here. And that's not going to change, right? The factor that gets you to the troubling won't change. You're either going to get over that threshold or not. But once you do, troubling is going to happen, correct? I think it's fair to say that if tracing occurs, the specific finding that there's $400,000, let's say that $400,000 is going to be troubled in terms of the amount that was actually borrowed. I don't think there's ever going to be a case where more than $400,000 in change is going to be troubled. We'll hear why there is in a minute. Of course. And let me also say... Your first point on probability of success, I mean, are you really saying we need to force judges even if they don't believe it's true to make some kind of estimate of probability of success? I mean, there are cases where I look at them and I say, gee, this really could go either way. I mean, I think pretty much every lawyer has days when cases look that way. If that's the judge's honest result, does ANC require him to do more than that? ANC does require him to do more based on the evidence that was presented in terms of a co-mingled pool of money. Keep this in mind. If my client had to put forth evidence, and let's just say there was no opposition to evidence and only argument, there would be no evidence presented to the court to support this seven-figure settlement. My point is, looking at the evidence, if the judge says this is a push, you know, I don't know. Is that automatically not satisfied ANC properties? I would say this. I would say that you look at the other three factors. And in terms of the other three factors, the judge said on costs, I always find in favor of settlement. That's what he said on costs. All the parties, and I think the court agreed, that on the issue of collectability, it was a non-issue. And then you're left with the interest of creditors. Well, this is a case that at this juncture, 100% of the creditors were going to get paid. Assuming the costs aren't as marked a concern that the court indicated they may be. Yeah. I mean, isn't that kind of contextual here, is that the court did agree, yes, you're proposing 100% and that's why you have standing, but dot, dot, dot, if this really does go south, you won't have standing because it won't be 100%. I think the bankruptcy court is absolutely entitled to make that finding. If somebody had presented a budget saying, hey, this case is going to take two years to litigate and we estimate attorney's fees are going to be $2.5 million and there's not going to be a left at the end of the day to pay the creditors. Nobody rolled up their sleeves and did that analysis. They just said, it's going to be expensive to litigate. That's not enough. AC properties requires more. Why? Because if the board says. What in the AC properties says it requires more? Because the essential holding of AC property is. No, tell me the essential holding. Tell me where in AC properties it says that you're required to do something more than make an estimate of the likely cost. I would say there's no express holding. Yeah, there isn't. But if you look to the purpose of AC properties. Let's shift gears a little bit here. This is a claim objection, right? This is not a situation in which the estate could get $20 billion if they hit on litigation. Correct. So your client had initiated an objection to the claim, right? Were they going to pursue that at their own cost? I think if this case. If this settlement is reversed, it'll be reduced in the state court. The litigation will happen in the state court. Okay, so that would be at your client's cost. Yes. So the estate would be out nothing except the time and the uncertainty of what's going to happen. Correct. Okay. Yeah. Again, the other side may not agree with that. But thank you for clarifying that from your perspective. Thank you, Your Honor. The final point I want to make is the court cannot provide sufficient or any weight, as far as I can tell, that the watchers received $400,000 in change in payment already. And that has to be a calculus. And you're doing substantial functions. Help me out. Where on the record was that demonstrated? The $444,000? Yeah. Your Honor, could I, on response, bring you that page? Yeah. So there's $300,000 that was paid by non-stipulation, wasn't it? Sanders stipulated a release of $300,000, I believe. Oh, but I think his point is that other sources outside of this paid that $300,000. I just can't. I'm not sure what the source of that is. So you're going to tell me. I will. I'll kind of come back, though. Thanks. And if I could, I'd like to reserve the balance of my argument for rebuttal. Fine. Thank you. Thank you, Your Honors. Ms. Jane, will you be dividing your time? Your Honor, if we may, we have divided up our time based on the questions asked. We have our topics very specifically delineated. Would it be okay to proceed that way? Thank you, Your Honors. Caroline Chang of Buckalter, appearing for Appellee's John and Mabel Watcher. On video is Danette Sanders of Ringstead Sanders, appearing for Appellee Karen Sue Naylor in her Kapatskyist Chapter 7 trustee. And as I mentioned, Your Honor, we have divided up the argument based on the questions from the panel. But at this time, I'd like to turn over my virtual podium to Ms. Sanders to make some introductory comments. Thank you. Go ahead, please. Good morning, Your Honors. I thank the Court.  I do believe that the trustee's position with regard to the agency factors and the issue that is repeatedly raised in opponents' briefs about the Court somehow being required to make this probability of success definitive ruling, that, in fact, the Bankruptcy Court did make that ruling when the judge concluded the hearing with this notion of, I can't assign probability. I can tell you there is a possibility on either side that is an explicit finding. The judge did, in fact, consider the evidence and make a determination that the initial agency factor was, in fact, met by the 1919 motion and the evidence in support of it. Beyond that, I think that the briefs address the legal standards. And I suspect with the Court, to me, there may be questions about, I'll call them factual elements, regarding the claim and how the matter was submitted to the Court. Let me follow up on something that I asked to your opposing counsel, which is just, you know, let's explore an alternative reality here, okay? What happened in the bankruptcy case happens with some frequency, that the trustee and a third party got into a discussion. They reached an amicable agreement about something having to do with the amount of a claim and then how a claim is going to get paid, okay? There is, at the moment at least, the possibility of another way forward here, which is to have the debtor pursue the action in state court, you know, with relief from state. If the debtor did that at the debtor's own expense, would the state be indifferent to that or would that be problematic for some other reason? Well, I, although this is not in the record, it's in the context of the general bankruptcy case. That was an option that was explored early on by the trustee and the debtor. And by the way, even though we have the same surnames, we are not related. So, what I say is... I thought that would be an extremely rude question to ask. I can advise the Court, but it was disclosed in our application. Well, if Mr. Sanders is highly motivated and thinks this is an outrage and he never, you know, there's nothing to these allegations, is there a reason why one alternative wouldn't be, well, Mr. Sanders, you go to family. Don't charge the estate anything. And maybe this is more solvent of an estate at the end of the day. A couple of points there. It was an alternative that was explored in the interim. And I'm going to share this against the context of that the debtor has now lost his third bankruptcy counsel in the case. So, we've had sequencing issues, bringing counsel up to speed in order to address issues. We've had a case where it is a real property estate. There are multiple properties. The case pending with secure debt not being paid, relief from state motions being filed, property values declining. They were very high interest rate loans. So, what ideally would have been an excess estate when it was initially filed as an 11 and before it was confirmed, now has a low probability of being such an estate, which is incredibly unfortunate because it didn't have to happen this way. But, I'm sorry, I thought you were going to ask a question. No, I'm just thinking it's painful. I will ask the question. If I'm suggesting that it would have interfered with the administration of the estate, were you to allow Mr. Sanders to simply go defend this on his own nickel? The trustee had the option against the scrutiny that is often with the benefit or lack of benefit of hindsight where a trustee is criticized for not having moved with alacrity to proceed to liquidate assets when you don't have a fixed predator body to know what you're actually liquidating to achieve with the debtor complaining that you liquidated more than you had to. Those cases are pending as we sit here today where claims like that are made. In the interim, given a point that has been raised many times on the record by the watchers, these two individuals are not getting any younger. It resulted in the filing of, they filed their formal proof of claim, they filed a motion to estimate, the debtor filed a formal claim objection to the topic and the issue of what we call the elephant in the room, namely their claim, has come before the court in a more streamlined process. And in connection with the motion to estimate, the court set a briefing schedule and said, I'm going to send you to mediation, which is what the court did. In the meantime, here's the briefing schedule. Let's get ready for a full evidentiary hearing in December of last year. And it was at the mediation before Judge Clarkson in which all of the parties participated that the trustee and the watchers reached a resolution that, in the trustee's business judgment, makes so much sense. It resolves so many issues. It allows the case to proceed. And it is the appellee's position that the bankruptcy court, against the backdrop of more than a year of experience with this case, having had argument in front of it on multiple occasions about the basis for the watcher's claim, the debtor's defenses, this was a reasonable settlement and it satisfied the A&C factors, which as was commented on earlier, those of us who live in this world, I can't tell you how many times I've read A&C factors, and oftentimes it raises more questions in my mind than it actually provides a solution. We tend to rely on those four factors as what we look at in deciding whether or not a settlement is reasonable and in the best interest of the estate. Okay. Thank you. Your Honor, if I may make just a couple brief comments. I wanted to point out that the characterization of the claim that was compromised as a conversion claim is completely incorrect. The claim was based on several factors. And most importantly, a judgment from the state court reforming the deeds of trust and notes ab initio. That was undisturbed. That was not vacated by the order vacating the default. The state court even reiterated that when the debtor brought a motion before the state court to, quote, unquote, enforce its order lifting the default. The state court specifically found that that order lifting the default did not disturb the court's ruling regarding the reformation of the deeds of trust and notes ab initio. And the amount due on the notes and deeds of trust are in and of themselves, and I can walk through the numbers, and we're all not great at numbers, but I'm looking at our estimation motion, which ER 1579, the total claim was $4,518,287.77. Just parsing out what was due on the notes and deeds of trust, we already get to $1,177,949.21. That's as of September 2022. And the trustee has made clear before the bankruptcy court that the interest continues to accrue. So that … In the reformation of the deeds of trust, is that included in the appeal that's to be argued tomorrow, or is that not an issue on appeal? It's not an issue on appeal, Your Honor. The appeal is by my clients, and the only issue on appeal is whether the state court erred in not considering that was filed by my clients that showed multiple examples of perjury and inconsistent testimony under our penalty of perjury. So that is the only issue. So I also want to know, Fred … If you win that, is that a reversal or a vacate? Let's see. Good question. If we win, it's game, set, match. It's not just a vacate, go back to state court. Correct. Okay. But if the debtor wins, true enough, we go all the way back to beginning. I mean, I think there's been an answer. But the appeal that's being argued tomorrow, that's not going to end this litigation. That's either … It would only end litigation in our favor. The best thing that can happen for the debtor is that the appellate court, the state appellate court, does not overturn, sorry, affirms, and therefore we start all over because he gets to have a full litigated trial as opposed to the default move up. But if there is a ruling in his favor on appeal, were you saying that the reformation of the deeds of trust would still remain? Yes, I am, Your Honor, because in this state court effect … Is that part of litigation against American bankers? Yes, Your Honor, exactly. And that just sort of, in your mind, fixes, is really liable on this obligation. That part of the judgment that reformed the notes and deeds of trust is against American bankers and Rick Floyd, who … Rick Floyd, right. Yes, so those two litigants never appealed, and that judgment remains final. And as I mentioned before, the state court already affirmed that that's final and undisturbed. So if we talk about even just those amounts alone, we are well over the settlement. When we consider the additional attorney's fees, the additional interest that accrued since September 2022, we are well over $1.445 million. So even that alone, if we also consider the conversion claim, which I understand the difference of opinion here, but, Your Honor, I poured through that whole box of papers, and the checks that my clients wrote to Rick Floyd or American bankers literally say on them, Corona Del Mar property. And they literally say Callaway Circle property. The way that it's portrayed in the debtor's papers is that this is a complete fiction pulled out of thin air. They just wrote checks. They have no idea where they went. That's just not true, Your Honor. There are term sheets in the record, term sheets that say, Your borrower is Joseph Sanders. Your collateral property is this. So this is not some crazy fiction. So it's just a pool of the rest of them. Correct. Correct. These monies were designated to loan money on these properties to this lender. That's correct, Your Honor. I can give you those excerpts on the record if you'd like. No. Thank you, Your Honor. So, I mean, I think that's really what I wanted to cover. Simply the numbers, the sheer numbers are off. Actually, I think I'm going to help Mr. Lewis out. There is in the. . . You can judge with that problem. Right. Yeah. And this actually helps me out, too, because the argument here, and this is page 8 of the opening brief, the bankruptcy court, quote, failed to account for $744,000 in amounts already recovered. So ER 1615, that is an excerpt from Ms. Naylor's declaration in support of the estimation motion. She considered those amounts. She breaks them down. The watchers did recover those amounts from other defendants, but those are on different causes of action. There's a Catherine Floyd. She's the wife of Mr. Floyd. They settled with her on a fraudulent conveyance claim. So you're saying that's not a set-off? No, it's not a set-off. Okay. Not a set-off. What did the bankruptcy court do with that issue? Did it make a finding about that? I don't know that the judge made a finding. If it did, what could we do? Well, it was certainly before the court. It was always before the court. We never hit this. I mean, Judge Clark, well, I can't specifically state. But in mediation, we made the court aware that these amounts were received. It just kind of goes into the big settlement sausage-making thingy that results in a settlement. Exactly, Your Honor. From your perspective. Yes, Your Honor. And, again, these were from different parties on their loans. The specific judgment against Mr. Sanders was as to those properties and specific to conversion. And there's no joint liability there that would suggest another result, right? No, Your Honor. Okay. Anything further? Not for me, Your Honor. All right. Any questions? Okay. Thank you very much. Thank you, Your Honor. Mr. Lewis for seven minutes plus. Thank you, Your Honors. I didn't follow my colleague's citation to the record. I was relying on page ER671, page 671. Thank you. And that sets forth the $444,000. And the source of it, right? Yeah. Okay. And the three specific names. Okay. Much of what Ms. Sanders offered over video related to off-the-record or outside-the-record developments since the motion was decided. Well, in fairness, I asked for it. I mean, because I asked her, you know, let's speculate on X, Y, isn't that okay? So, I mean, don't fault her or fault me. That's my problem. I'm not faulting her. But, Your Honor, I would just say changes to the Bankruptcy Council and those types of things were not before the court at the time it made its opinion. Okay. And I think it is fair to say that the court had before it evidence of these other payments or this other recovery made by the Watchers totaling over $700,000 and made no express findings about it. And the reason that's important is, if the essential holding of AC properties is compare the likely fruits of litigation versus this potential settlement, it's hard to do that without giving credits, at least giving Mr. Sanders the opportunity to argue if those are credits. And keep in mind, the Watchers invested just south of $1 million with Mr. Floyd, and they've recovered $744,000. And in addition to that, they're going to get by this settlement $1.5 million. That was the specific numerical analysis that the court was required to weigh, and the record just doesn't suggest that he did that weighing. What has to happen for the last tranche to come in? It's not like writing a check tomorrow, right? The remaining allowed claim for $1.15 or whatever it is, what has to happen for that to get paid? I imagine more real properties would have to be liquidated. Okay. Nothing else? No other success in the litigation? No. Okay. Thank you. Yeah. Next. What about Ms. Jang's statement that the reformation of the deeds of trust will remain in place regardless of the outcome of the appeal in the state court? I don't know that that's true, and here's why I say that, Your Honor. The same tentative ruling she was reading from, where the judge said the judgment in favor of the bankers is going to stay, that same ruling said, hey, this whole case is on appeal. I have no jurisdiction to even rule or touch this motion. So I think after tomorrow's appeal resolves within 90 days in state court, they take 90 days to issue their rulings. We'll get a decision, and if we go back down at that point, then Mr. Sanders can take another run at collaterally attacking the impact of the reformation rulings as against him. He tried to attack it before, and the state court judge said, as long as the watcher's appeal is pending, I have no jurisdiction to touch it. But does that really matter to him? Does he deny owing that money on those loans? Is that really just about who he needs to pay? That's exactly right. I don't think he would say, I don't owe somebody something. Unless he's paying and getting credit against that debt. If he's paying the watchers, he doesn't care, right? Right. He's going to have to pay somebody. He is going to have to pay somebody, but we're talking about something in the order of mid-six figures as opposed to mid-seven figures. So from the watcher's standpoint, that was an inducement to sell, right? Was to just clean that up and make it simpler than it might have been to have the money traced through some other way? I suspect that was true. Okay. I suspect that's right. Okay. The final point I'll make, or the final two points I'll make is this. There was a suggestion that there were representations made about this money being used for this loan. To be clear, my client didn't make those representations, and there was never any allegation below that my client made those allegations. The allegations were that Floyd represented to the watchers, hey, your money is going to be used to fund, you know, this loan and be tied to this property. There was no evidence presented below in connection with this motion tying my client to Floyd in that regard. So the representations were made, but not by this Mr. Sanders. My final point is there was some discussion about well over $4 million in claims that was established below that relies on troubling, and the troubling only comes into play if you have a specific sum. And I don't think the evidence in front of the court was enough to warrant troubling. And with that, I am prepared to submit unless there's more questions. Thank you very much. Thank you very much. The matter is submitted. We will get our decision promptly. Thank you.
judges: FARIS, LAFFERTY, and SPRAKER